UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| | : | |
| v. | : | Case No. 3:19CR220 (VAB) |
| | : | |
| DERON FREEMAN | : | July 29, 2021 |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S PRETRIAL
MOTION [Doc. #41] TO DISMISS COUNT THREE OF THE SUPERSEDING INDICTMENT
ON STATUTE OF LIMITATIONS GROUNDS

The United States submits this opposition to the defendant's pretrial motion to dismiss Count Three of the Superseding Indictment that argues that the Count is barred by the applicable statute of limitations. Count Three of the Superseding Indictment charges the defendant with willful failure to pay tax for the 2012 calendar tax year in violation of 26 U.S.C. Section 7203. The parties agree that the statute of limitations for a violation of Section 7203 is six years, absent agreements between the parties that would toll the limitations date. *See* Def. Mem. at 3. In the present case, there were tolling agreements and the express, plain language of those agreements makes clear that Count Three is not time barred.

Payment of tax for the 2012 tax year was due on April 15, 2013,[1] and thus the six year statute of limitations would not run until April 15, 2019, absent an agreement to toll the statute of limitations period. The defendant contends that, because the defendant sought an extension to

---

[1] By that April 15, 2013 due date, the defendant had paid nothing towards his 2012 tax obligation while depositing over $1,000,000 in insurance settlement checks into an IOLTA that he failed to disclose to either his accountant or the Statewide Grievance Committee, transferring over $313,000 of his money from a nominee account in the name of a third party to one of his personal bank accounts, and spending tens of thousands of dollars to lease a Ferrari and on construction of a 7,000 square foot custom home.

1

file his 2012 taxes until October 2013, the beginning of the statute of limitations would not have commenced until October 2013, and thus the statute of limitations would not run until October 15, 2019. However, an extension to *file* a tax return does not extend the duty to *pay* the tax balance owed in April of that year. *See* 26 C.F.R. § 1.6081-4 ("[a]n automatic extension of time for filing a return granted under paragraph (a) of this section will not extend the time for payment of any tax due on such return."). But whether the date to commence the statute of limitations clock was April or October 2013, does not impact the analysis.

During this case, the parties entered three tolling agreements, dated February 7, 2019; April, 3, 2019; and January 2, 2020. Doc. 41-2. The parties do not dispute that each tolling agreement contemplated tolling the statute of limitations for various prosecution theories of potential tax offenses, including tax evasion, filing false tax returns, and willful failure to pay tax for the 2011 through 2016 tax years. *Id.* Each agreement also discussed the parties' mutual interest in exploring a resolution of this case as a reason for seeking additional time. *Id.*

Though surprisingly not quoted by the defendant's memorandum, each tolling agreement contained carefully crafted language as what time would be excluded from the limitations period as follows:

> 3. NOW THEREFORE, the United States and Mr. Freeman, do hereby agree as follows:
>    a. The running of any statute of limitations pertaining to conduct described in paragraph 1 shall be tolled from the Effective Date of this agreement through and including [*a date certain*], ***or the date ten days after the date this Agreement is revoked in writing by Mr. Freeman[1] <u>whichever is later</u> for the purpose of determining the statute of limitations . . .*** (emphasis added).

*See* Doc. 41-2 (Tolling Agreements 1-3).

The purpose of this express tolling provision was to allow for the possibility of an open-ended period of tolling – that is, a period up to the date "ten days after the date this Agreement is revoked in writing" -- which allowed flexibility for a range of reasons, including resolution

2

discussion, without the need for multiple tolling agreements. This flexible revocation period was not an afterthought, but a pivotal term of the Agreements. In fact, the Agreements go on to outline with some particularity the required method of revocation. Footnote 1 to the Agreements explains:

> Written revocation will be accomplished by sending by FedEx and facsimile to the below-signed counsel at the U.S. Attorney's Office of the District of Connecticut giving notice of the revocation of this Agreement. Mr. Freeman, through his counsel, further agrees to attempt to have his counsel contact the below-signed Assistant United States Attorney orally of the intention to revoke this Agreement prior to or at the time the written revocation is sent.

*See* Doc. 41-2 (Tolling Agreements 1-3 at n.1).

Each agreement also included a date certain (May 7, 2019; September 6, 2019; and May 1, 2020, respectively), which defined a minimum period for tolling under the Agreements. In entering a tolling agreement, the Government often slows or pauses an investigation by delaying the issuing of subpoenas, the scheduling of grand jury time or otherwise limiting its expenditure of resources. Thus, this initial minimum period for tolling provides a meaningful time period necessary to protect the Government from a defendant revoking the agreement shortly after entering it. After that minimum period, the Government becomes willing to assume the risk that a defendant decides thereafter to stop the tolling provision by providing notice of revocation as provided for in the Agreement.

In the present case, the Government entered the three agreements and secured minimum tolling periods of February 7, 2019 through May 7, 2019; from April 3, 2019 through September 6, 2019; and from January 2, 2020 through May 1, 2020. After May 1, 2020, the Government assumed the risk that the defendant could stop the tolling period in the manner specified in each Agreement and put the Government on a tighter clock to file charges.

**In this case, Mr. Freeman never exercised his right to revoke the open-ended tolling period.** Instead, the Government periodically requested additional tolling agreements to give itself the initial minimum tolling period provided by each agreement as it continued to explore a potential resolution of the matter, well knowing that the defendant reserved the right to terminate the tolling period under the Agreement after the initial tolling period. At no point did the defendant express reluctance in entering an additional tolling agreement and with good reason as discussions were continuing.

There is no unfairness in the express language of the Agreement or in holding the defendant to its terms. Indeed, the defendant was well-represented by experienced counsel in executing the Agreements and is himself an attorney. The plain language of the Agreements is hardly lost on Mr. Freeman or his counsel. Further, it was entirely reasonable for the parties to delay this matter to allow detailed ongoing discussions. If this matter was not resolved, it was both expressly discussed and understood that these types of charges would follow. In fact the Superseding Indictment and potential additional charges were openly discussed with the Court in various scheduling conferences as the parties discussed setting a realistic trial date for this case.

Respectfully submitted,

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY

*/s/ Christopher W. Schmeisser*
CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct14806
christopher.schmeisser@usdoj.gov

*/s/ Susan L. Wines*
SUSAN L. WINES
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv2379
susan.wines@usdoj.gov

157 Church Street, 25th Floor  
New Haven, CT  06510  
Tel.: (203) 821-3700  
Fax: (203) 773-5377

CERTIFICATION OF SERVICE

  I hereby certify that on July 29, 2021, a copy of the foregoing was filed electronically, by facsimile and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

             */s/ Christopher W. Schmeisser*
             Christopher W. Schmeisser
             Assistant United States Attorney