UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  *Plaintiff*,<br><br>  v.<br><br>DERON D. FREEMAN<br>  *Defendant*. | No. 3:19-cr-00220 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS AND MOTION *IN LIMINE***

Following an indictment, Deron D. Freeman ("Defendant") has been charged with multiple counts of federal tax crimes, including filing false returns and willful failure to pay income tax. *See* Superseding Indictment, ECF No. 37 (May 10, 2021) ("Superseding Indictment").

On July 6, 2021, Mr. Freeman filed a motion to dismiss the third count of the Superseding Indictment, which charges him with failure to pay tax in the 2012 tax year in violation of 26 U.S.C. § 7203. *See* Mot. to Dismiss, ECF No. 41 (July 6, 2021); Mem. in Supp. of Mot. to Dismiss, ECF No. 41-1 (July 6, 2021) ("Mot. to Dismiss").

On September 30, 2021, Mr. Freeman also filed a motion *in limine* regarding the admissibility of records related to a state grievance proceeding. *See* Mot. *in Limine*, ECF No. 53 (Sept. 30, 2021) ("Mot. *in Limine*").

For the following reasons, the motion to dismiss is **DENIED**, and the motion *in limine* is **DENIED** without prejudice to renewal at trial.

1

I.      FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2019, a grand jury indicted Mr. Freeman on two counts of making and filing a false tax return in violation of 26 U.S.C. § 7206(1). *See* Indictment, ECF No. 1 (Sept. 5, 2019). Following his subsequent arrest, *see* Arrest Warrant, ECF No. 3 (Sept. 5, 2019), on September 10, 2019, Mr. Freeman pled not guilty at his arraignment, *see* Minute Entry, ECF No. 7 (Sept. 10, 2019). U.S. Magistrate Judge William I. Garfinkel released Mr. Freeman on bond, and imposed certain conditions on his continued release pending trial. *See* ECF No. 8 (Sept. 10, 2019); Order, ECF No. 9 (Sept. 10, 2019).

Before the criminal charges here, Mr. Freeman, who is an attorney, faced proceedings in Connecticut Superior Court related to the initiation of grievance proceedings against him for alleged mismanagement of his accounts. *See* Mot. *in Limine*. In 2013, the Connecticut Superior Court required Mr. Freeman to conduct an audit of his Interest on Lawyers' Trust Accounts ("IOLTA") account and otherwise imposed sanctions, *see Disciplinary Couns. v. Freeman*, No. HHDCV136046989S, 2018 WL 2749687, at *1 (Conn. Super. Ct. May 14, 2018), with which the Superior Court determined that Mr. Freeman had complied in 2018, *see id*. at *1–*4.[1]

On May 10, 2021, following several requests for extension of time, the Government filed the Superseding Indictment charging Mr. Freeman with: (1) making and subscribing a false tax return in the 2011 tax year in violation of 26 U.S.C. § 7206(1) ("Count One"); (2) making and subscribing a false tax return in the 2012 tax year in violation of 26 U.S.C. § 7206(1) ("Count

---

[1] The Court takes judicial notice only of the existence of the Connecticut Superior Court orders, as required to rule on the motion *in limine*, but does not take judicial notice of the documents for the truth of the matters asserted. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents."); *see also Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks and citation omitted)).

Two"); (3) failure to pay income tax in the 2012 tax year in violation of 26 U.S.C. § 7203 ("Count Three"); (4) making and subscribing a false tax return in the 2013 tax year in violation of 26 U.S.C. § 7206(1) ("Count Four"); (5) failure to pay income tax in the 2013 tax year in violation of 26 U.S.C. § 7203 ("Count Five"); (6) failure to pay income tax in the 2014 tax year in violation of 26 U.S.C. § 7203 ("Count Six"); and (7) failure to pay income tax in the 2015 tax year in violation of 26 U.S.C. § 7203 ("Count Seven").

On July 6, 2021, Mr. Freeman filed a motion to dismiss Count Three of the Superseding Indictment. *See* Mot. to Dismiss. In response, the Government filed a memorandum in opposition on July 29, 2021. *See* Mem. in Opp'n, ECF No. 45 (July 29, 2021) ("Opp'n"). On August 12, 2021, Mr. Freeman filed a reply in further support of the motion. *See* Reply Mem. of Law in Supp. of Def.'s Mot. to Dismiss, ECF No. 50 (Aug. 12, 2021) ("Reply").

On September 30, 2021, Mr. Freeman also filed a motion *in limine* regarding the admissibility of records from a state grievance committee proceeding. *See* Mot. *in Limine*. The Government filed a response to that motion on October 8, 2021. *See* Gov't Resp. to Def.'s Pretrial Mot. *in Limine*, ECF No. 55 (Oct. 8, 2021) ("Resp. Mot. *in Limine*").

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss

Federal Rule of Criminal Procedure 12(b) permits defendants to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *United States v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018). "The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). "But when such a defense raises dispositive evidentiary questions, a

district court must defer resolving those questions until trial." *Sampson*, 898 F.3d at 279 (internal quotation marks omitted).

### B.  Motion *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks omitted). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).

## II.  DISCUSSION

### A.  Motion to Dismiss

Mr. Freeman has moved for the dismissal of Count Three of the Superseding Indictment, in which he is charged with violating 26 U.S.C. § 7203, on the grounds that the prosecution is barred by the six-year statute of limitations under 26 U.S.C. § 6531(4). *See* Mot. to Dismiss.

The Government concedes that Count Three would be barred under the six-year statute of limitations, *see* Opp'n at 3, but contends that this limitation has been tolled by tolling agreements between the parties, *see id.* at 1–4.

Mr. Freeman does not dispute that he entered into three tolling agreements dated February 7, 2019; April 3, 2019; and January 2, 2020 with the Government, each of which contains the following provision, with the date certain adjusted accordingly:

> NOW THEREFORE, the United States and Mr. Freeman, do hereby agree as follows: [ ] The running of any statute of limitations pertaining to conduct described in paragraph 1 shall be tolled from the Effective Date of this agreement through and including [a date certain], or the date ten days after the date this Agreement is revoked in writing by Mr. Freeman[1] whichever is later for the purpose of determining the statute of limitations . . . .

*See* Reply at 2; *see also* Tolling Agreements, Exs. 1, 2, & 3 to Mot. to Dismiss, ECF No. 41 (July 6, 2021) ("Tolling Agreement"). The parties further do not dispute that the method of revocation is specified in a footnote to the foregoing provision of the Tolling Agreement, as follows:

> Written revocation will be accomplished by sending by FedEx and facsimile to the below-signed counsel at the U.S. Attorney's Office of the District of Connecticut giving notice of the revocation of this Agreement. Mr. Freeman, through his counsel, further agrees to attempt to have his counsel contact the below-signed Assistant United States Attorney orally of the intention to revoke this Agreement prior to or at the time the written revocation is sent.

*See* Reply at 2–3; *see also* Tolling Agreement at 1 n.1.

Mr. Freeman does not present any evidence to suggest that he revoked his consent to the most recent tolling agreement signed on January 2, 2020 (the "Agreement"). *See* Reply; *cf.* Opp'n at 4 ("Mr. Freeman never exercised his right to revoke the open-ended tolling period."). Rather, Mr. Freeman argues that the Agreement terminated at the last date certain to which the

5

parties agreed, which the Government agrees has expired, *see* Opp'n at 3, because the tolling language is ambiguous and therefore should be resolved in his favor, *see* Reply at 2–4. Mr. Freeman further argues that the revocation provision is superfluous, and that the indefinite tolling provision contravenes public policy. *See id.* at 1–4.

The Court disagrees.

As a preliminary matter, the revocation provision of the Agreement is not ambiguous. It does not, as Mr. Freeman argues, create four potential points in time at which the Agreement might be revoked, including the time of facsimile, Fedex mailing, written revocation, and oral notice. *See* Reply at 3. Rather, the Agreement requires that Mr. Freeman revoke "in writing" his consent to the tolling provision, *see* Tolling Agreement, and that the written revocation "be accomplished by sending by Fedex and facsimile," *id.* Conversely, the date that Mr. Freeman notifies the AUSA orally of the intention to revoke is not a necessary condition to accomplish written revocation; rather, the plain terms of the Agreement state that Mr. Freeman will "attempt to have his counsel contact" the Government orally. *Id.* On the plain terms of the Agreement, revocation occurs upon satisfaction of the two necessary conditions explicitly stated. Mr. Freeman does not cite any applicable cases that would permit this Court to reach any other conclusion.

Mr. Freeman further fails to cite any cases to support his argument that this Court may invalidate the revocation provision of the Agreement because it is superfluous, *see* Reply at 2, and, further, Mr. Freeman's argument that the revocation provision is superfluous appears to be based upon a misreading of the Government's brief. The Government did not state, either in its briefing or in the Agreement, that it was "unwilling" to assume the risk that Mr. Freeman might revoke his consent, as represented by Mr. Freeman, *see id.*; rather the Government states in its

brief that it entered the tolling agreements "well knowing that the defendant reserved the right to terminate the tolling period under the Agreement after the initial tolling period." Opp'n at 4. The Government's allegation that Mr. Freeman also entered the agreements without reluctance, "and with good reason as discussions were continuing[,]" *see id.*, is not rebutted in Defendant's reply, *see* Reply.

Finally, Mr. Freeman has provided no applicable authority to support his contention that a public policy exists to bar indefinite tolling agreements under the circumstances present here. The Second Circuit case cited in support of this argument, *T & N PLC v. Fred S. James & Co. of New York, Inc.*, 29 F.3d 57 (2d Cir. 1994), held that a tolling agreement that purports to extend the statute of limitations indefinitely is unenforceable only under New York state law, and only as a result of a limitation on the extension of statute of limitation periods under New York General Obligations Law § 17-103. *See id.* at 61–62. The Court is not aware of any other authority that would permit extension of this reasoning beyond its statutory context, grounded in New York law. *Cf. Clarendon Nat. Ins. Co. v. Culley*, No. 11-CV-2629 (HB), 2012 WL 1453975, at *4–*5 (S.D.N.Y. Apr. 25, 2012) (finding unenforceable tolling agreements that are "indefinite" under N.Y. Gen. Oblig. Law § 17-103); *Loral Corp. v. Goodyear Tire & Rubber Co.*, No. 93-CV-7013 (CSH), 1996 WL 38830, at *9 (S.D.N.Y. Feb. 1, 1996) (same).

The Court further is unaware of any federal law that would limit tolling of federal crimes governed by 26 U.S.C. § 6531(4) in a manner similar to New York General Obligations Law § 17-103. *See also United States v. Wild*, 551 F.2d. 418, 424–25 (D.C. Cir.), *cert. denie*d, 431 U.S. 916 (1977) ("Constitutional rights which the defendant may waive include, *inter alia*, the right to be represented by counsel . . . [and] the right not to be twice put in jeopardy . . . . If the strong policies behind these rights are not violated by a rule permitting them to be waived by a

defendant, we cannot find that the limitation statute's policy is violated here where the defendant was fully cognizant of the consequences of [ ] [an open-ended] waiver [of the statute of limitations] and decided to execute it on the advice of his attorney for his own benefit."); *United States v. Caldwell*, 859 F.2d 805, 807 (9th Cir. 1988) (rejecting public policy arguments against open-ended waivers of the statute of limitations, including "avoiding trials based upon stale evidence", and holding that "the proper standard by which to judge the validity of open-ended waivers [of a statute of limitations] is whether they are entered into knowingly and voluntarily"). Mr. Freeman therefore has not presented a public policy argument in his favor.

Accordingly, the motion to dismiss Count Three of the Superseding Indictment will be denied.

### B. Motion *in Limine*

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 ("Rule 401"). "Irrelevant evidence is not admissible." Fed. R. Evid. 402 ("Rule 402"). Evidence that is relevant, however, still may be excluded, for example, in the case of inadmissible hearsay.

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Id.* (citing Fed. R. Evid. 802).

At all times, this analysis is subject to Federal Rule of Evidence 403, which provides that, although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading

8

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 ("Rule 403").

In addition, if a "writing or recorded statement" is admitted, "an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106 ("Rule 106"). The Second Circuit has interpreted this rule "to require that a document be admitted when it is essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 103 (2d Cir. 1995) (internal citations and quotation marks omitted). "Underlying Rule 106, then, is a principle of fairness requiring the introduction of an entire or related document if necessary for the fair and impartial understanding of the admitted portion or document." *Id.* (citation omitted).

Mr. Freeman has moved to exclude records related to a grievance complaint against him ("Government Exhibits 163 and 164") under Federal Rules of Evidence 401 and 402. *See* Mot. *in Limine*. He also argues for the inclusion under Rule 106 of a Connecticut Supreme Court decision from 2018 involving Mr. Freeman, *Disciplinary Counsel v. Freeman*, No. HHDCV136046989S, 2018 WL 2749687 (Conn. Super. Ct. May 14, 2018) ("2018 Connecticut Superior Court Decision"), or, in the alternative, for the exclusion of exhibits related to an audit of Mr. Freeman's IOLTA accounts ("Government Exhibits 168 and 169") as unduly prejudicial under Rule 403. *Id.*

The Court disagrees.

As a preliminary matter, the Court need not address the admissibility of Government Exhibit 169 at this time, as the Government has represented that the exhibit will be used only to refresh a witness's recollection regarding dates and timing. *See* Resp. Mot. *in Limine* at 6. In the

event that the Government seeks to use this record in any other way at trial, the Court will entertain any further objections by Defendant at that time.

The remaining exhibits are relevant to the level of Mr. Freeman's knowledge of his finances and bank accounts, which are the basis of the federal tax filings for which he has been indicted, as explained in the Government's brief, and therefore will not be excluded under Rules 401 and 402. *See* Resp. Mot. *in Limine* at 6–9. The Court, however, will entertain any further objection to these documents at trial, including on the grounds that they are unduly prejudicial under Rule 403 or impermissible hearsay.

Regardless of any decision the Court may make at trial regarding the admissibility of Government Exhibits 168 and 169, the Court denies the admission of the 2018 Connecticut Superior Court Decision under Rule 106. If Government Exhibits 168 and 169 are admitted at trial, and even if they are admitted for substantive purposes, the Court can address at that time how to place the exhibit in its proper context. *See United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) (Underhill, J., concurring in part) ("As the Advisory Committee Note to Rule 403 observes, the prejudice to be considered under that Rule is the prejudice that is left after a limiting instruction has been given."). Certainly, the issue of whether Mr. Freeman complied with the IOLTA audit is not central to the case. *Cf. id.* ("Although this Court generally presumes that [courts and] juries follow limiting instructions, that presumption 'evaporates where there is an overwhelming probability that the [judge or] jury will be unable to follow the court's instructions and the evidence is devastating to the defense.'" (quoting *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994)).

Further, as the Government states in its brief, there is no apparent reason for which the 2018 Connecticut Superior Court Decision should be introduced under Rule 106 for substantive

purposes, as a matter of fairness, if it has the capacity to buttress, rather than rebut or offset, the Government's position. *See* Resp. Mot. *in Limine* at 10–12 ("[A] finding of the court cited by the defense that [Defendant] hired multiple professionals, spent countless hours and significant funds in the courts of the attempted reconciliation, making his best efforts to respond to each inquiry made by the Bar Counsel and to provide information available to him, [. . .] further paints the picture that the defendant knew exactly what was going on with firm finances." (internal quotation marks omitted)).

Accordingly, Mr. Freeman's motion to exclude Government Exhibits 163, 164, 168, and 169, as well as his motion to introduce the 2018 Connecticut Superior Court Decision under Rule 106, will be denied without prejudice to renewal at trial.

### III.  CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED**, and the motion *in limine* is **DENIED** without prejudice to renewal at trial.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of October, 2021.

                                                        /s/ Victor A. Bolden  
                                                        Victor A. Bolden  
                                                        United States District Judge